## Wickersham v. Wickersham.

(Decided March 16, 1917.)

### Appeal from Mercer Circuit Court.

1. Appeal and Error—Review.—Where the trial court did not pass upon a motion, it will be presumed the court was not asked to do so, and it will be treated as having been waived by the party making it.

2. Wills—Construction—Intention.—The fundamental rule in the construction of wills is, that the intention of the testator, as gathered from his entire will, must prevail, unless it be opposed to some positive provision of the law, or some general principle of public policy.

3. Wills—Construction.—In construing a will the entire instrument must be taken into consideration; each part and clause thereof must be read in connection with the other parts; and, all technical

rules of construction must give way before the intention of the testator which governs, whenever it can be fairly ascertained.

4. Wills—Construction—Intention.—In seeking to ascertain the intention of a testator the real question always is, not "What did the testator intend to say?" but "What is meant by what he did say."

5. Wills—Construction.—Where a testator devised land to the children of his daughter Mary Cornelia and her husband John, reserving, however, to Mary Cornelia "a life estate in same as long as she lives and is in her right mind, the same to be held jointly with her husband John, but in the event she is sent to a lunatic asylum then her interest in said land is to cease, and then John is to have the whole of the life estate therein, but to forfeit such interest if he abandons his wife or his children, all of whom are to have, while unmarried, a home in said land until the youngest child then living is 21 years of age," Mary Cornelia and John, her husband, jointly took an estate for the term of their lives, and to the survivor of them during his or her life; and, upon the death of Mary, John was entitled to hold the estate during his life.

6. Costs—Persons Entitled.—A plaintiff is entitled to costs where he obtains relief of any kind or to any extent, though not all he asked for, if the action was necesary to obtain the relief which was granted.

C. E. RANKIN and EMMETT PURYEAR for appellant.

E. H. GAITHER for appellees.

OPINION OF THE COURT BY JUDGE MILLER—Affirming.

Cornelius Terhune, a lawyer by education, a farmer by occupation, and a man of affairs, died testate in 1908. He was survived by a son, David R. Terhune, and a daughter, Mary Cornelia Wickersham, wife of the defendant, John W. Wickersham.

By the first clause of his will, dated November 19, 1907, Cornelius Terhune directed the payment of his debts and the erection of a suitable monument at the graves of himself and wife; and, by the second clause, he gave to his son David a farm of 139 acres, on the waters of Salt River and Chaplin, and another tract of 16 acres on the Quirk Run turnpike.

The third clause of the will reads as follows:

"I will and bequeath to the children of my daughter, Mary Cornelia Wickersham, now living and hereafter to be born of her marriage to her present husband, John W. Wickersham, the land hereinafter described, and if any of said children should die unmarried and under the

age of 21 years the survivors to take the whole, subject, however, to the following conditions, the said Mary Cornelia is to have a life estate in same as long as she lives and is in her right mind, the same to be held jointly with her husband, John W. Wickersham, but in the event she is sent to a lunatic asylum then her interest in said land is to cease and then John W. Wickersham is to have the whole of the life estate therein, but to forfeit said interest if he abandons his wife or his children, all of whom are to have while unmarried, a home in said land until the youngest child now living is 21 years of age. My land bequeathed in this paragraph is described as follows: One hundred and seventy-five acres in Mercer county west of Nevada bought by me from the heirs of David Board.''

By the fourth clause the testator directed that his house and lot in Nevada, Ky., on which he was living at the time of his death, should be sold and the proceeds equally divided between his son David and the children of his daughter, Mary Cornelia, who should be living at the time of the testator's death; and, by the fifth clause he directed that his household goods and other personal effects should be divided by his son David and his son-in-law John Wickersham, as might be agreed upon by them.

By the sixth clause he directed that in the event of his death before Sallie Prather should pay for the house and 14 acres of land in front of testator's house, and which he had evidently theretofore sold to her, he directed that his son David and his son-in-law John Wickersham should each contribute $100.00 from the testator's estate in paying for said property.

By a codicil bearing the same date, the testator appointed his son David executor of his will, and directed that he should have possession of the house and lot in Nevada theretofore disposed of by the fourth clause of the will, and rent the same at his discretion, until he could sell it without a sacrifice, and to divide the rent equally between himself and the children of his daughter Mary Cornelia.

At the time the will was written, as well as at the time it was probated, Mary Cornelia Wickersham had seven children, five of whom are infants. It further appears that the testator's daughter Mary Cornelia had theretofore been insane; and, at the time the will was written, she was in feeble health, and apparently liable at any time to relapse into insanity.

The answer alleges that Mary Cornelia Wickersham was subsequently adjudged insane by the Mercer county court, and ordered to be committed to the Eastern Kentucky Asylum for the Insane, at Lexington; but that, at the earnest request of her relatives, she was confined at her husband's home under the care of a trained and skillful nurse, where she died, insane, in 1912.

On May 20, 1916, this action was brought by Fred O. Wickersham and Paul L. Wickersham, the two adult children of Mary Cornelia, against their father, John W. Wickersham, and the five infant children of Mary Cornelia, claiming that their father's interest in the farm devised by the third clause of the will had ceased upon the death of their mother in 1912, and that the children of Mary Cornelia then became the joint owners of said land, to the exclusion of their father.

John W. Wickersham answered, alleging that it was the intent and purpose of Cornelius Terhune to devise to John W. Wickersham a life estate in the land, and that in preparing the will the draftsman, although a skilled lawyer, had not fully expressed the meaning of the testator; and, he asked that the will be reformed so as to give the defendant his life estate, in explicit terms. In addition, John W. Wickersham alleged that Mary Cornelia Wickersham was, at the time of her death, the owner of an undivided one-seventh interest in the Board farm, by inheritance from her mother, and he asserted his curtesy in that interest.

The plaintiffs moved the circuit court to require John W. Wickersham to elect whether he would seek to hold the one undivided seventh interest by right of curtesy, or under the will of Cornelius Terhune. But, as this motion was never passed upon by the court, it will be presumed the court was not asked to do so, and that the question raised by the motion was waived.

A demurrer was sustained to so much of the answer as sought to reform the will or to bring into it an intention not therein expressed. But, in construing the will, as written, the circuit court held that John W. Wickersham was the owner of an estate for and during his life, subject to the right of all of the unmarried children of Mary Cornelia Wickersham to a home therein until the youngest child becomes 21 years of age, with remainder to the seven children of Mary Cornelia, with the limitation that the share of any one of them dying before he or she should become 21 years of age, should pass to

the survivors thereof. It was further adjudged that the plaintiffs pay the costs of the action.

The fundamental rule in the construction of wills is, that the intention of the testator, as gathered from his entire will, must prevail, unless it be opposed to some positive provision of the law, or some general principle of public policy. The entire will must be taken into consideration; each part and clause thereof must be read in connection with the other parts. And, all technical rules of construction must give way before the intention of the testator, which governs whenever it can fairly be ascertained. Cecil v. Cecil, 161 Ky. 419. But, it must not be forgotten, that in seeking to ascertain the intention of the testator the real question always is, not ''What did the testator intend to say?'' but, ''What is meant by what he did say?'' Bedford v. Bedford, 99 Ky. 284; Howard v. Cole, 124 Ky. 816; Fowler v. Mercer's Exr., 170 Ky. 353; Lewis v. Reed's Exr., 168 Ky. 559; Guthrie v. Guthrie's Exr., 168 Ky. 805; Bingel v. Volz, 142 Ill. 214, 16 L. R. A. 321, 34 Am. St. Rep. 64.

Applying this rule to the whole will, as bearing upon the third clause, it is apparent that the testator's prime purpose was to treat his son David on the one hand, and his daughter Mary Cornelia on the other hand, alike in the distribution of his estate, except insofar as her misfortune required some limitation upon her share. He gave David a farm of 155 acres, in fee simple; and, by the third clause he gave his other farm of 175 acres to Mary Cornelia, her husband and children, to be held in such a way as to take care of her and her children during her misfortune and their minority. By reason of Mary Cornelia's misfortune her share could not be given to her absolutely, and, at the same time, carry out the testator's evident purpose to care for her and keep the children together, without placing some limitation upon it, and imposing some burden upon her husband. This purpose of making Mary Cornelia and her family equal with her brother David, included her husband, and he was so treated in the will to the extent of joining him, as grantee in the life estate.

In carrying out this idea the testator, in the fourth clause, directed his home place to be sold and the proceeds to be equally divided between David and Mary Cornelia's children; and, a like disposition was made of his household goods and personal effects, by the fifth clause. And, to further show this equality, by the sixth clause he directed that in case Sallie Prather should fail to pay

for the house and lot referred to, that his son David and his son-in-law John Wickersham should each contribute $100.00 in paying for that property. It does not appear from the will who Sallie Prather was, but it was the evident purpose of the testator that in case she should fail, for any reason, to perform her obligation by paying for the place, that $100.00 should be taken from the shares of David and John Wickersham, respectively, and used in paying the debt of Sallie Prather to the estate. The duty was imposed upon John Wickersham, not upon Mary Cornelia; and, in directing John Wickersham to contribute ''$100.00 from my estate'' for that purpose, the testator certainly meant to give John more than a mere joint life estate, determinable upon Mary Cornelia's death, which might have occurred the next day.

When we come, therefore, to examine clause three which is under consideration, it will be seen that the Board farm was devised (1) to the children of Mary Cornelia by her husband John W. Wickersham, ''subject, however, to the following conditions,'' (2) that Mary Cornelia was to have a life estate therein as long as she was in her right mind, this estate to be held jointly with her husband, but (3) in the event she should be sent to a lunatic asylum, her interest in the land was to cease, and John W. Wickersham should have the whole of the life estate therein, which he was to forfeit in case he should abandon his wife or his children. It was further provided that during this life estate, all of their children, while unmarried, were to have a home upon the place until the youngest child should become 21 years of age.

But, in giving Mary Cornelia a life estate ''jointly with her husband,'' and providing that ''her interest'' was to cease and her husband John was then ''to have the whole of the life estate'' in order that he might be able to carry out the testator's wishes as to the support not only of Mary Cornelia, but the support of their children, it is manifest the testator gave a joint life estate to Mary Cornelia and her husband John, the survivor to take the whole life estate upon the death of the other.

If this is not true, why was John to forfeit his interest in case he abandoned his children? If he had no interest to forfeit after Mary Cornelia's death, this provision is without any force whatever, and the rule that every provision of a will must be given effect, will have to be ignored. And if John's interest was to be measured by the life of Mary Cornelia, how could he carry out the clearly expressed command of the testator that

all the unmarried children be given a home on this farm until the youngest child should become 21 years of age—quite a long period as it turns out—regardless of the fact that Mary Cornelia should be living or dead? The direction as to the home for the children is absolute, and rests upon John; and, linked with the provision giving him "the whole of the life estate," is the provision for its forfeiture in case he should abandon his children.

It is reasonably plain, therefore, that the testator meant to give and did give Mary Cornelia and John, and to the survivor of them, an estate for life, with remainder to their children, and that the circuit court was not in error in so holding.

The circuit court did not err in allowing defendants their costs. The rule is that a plaintiff is entitled to costs where he obtains relief of any kind or to any extent, though not all he asked for, if the action was necessary to obtain the relief which was granted.

To illustrate: In Ross v. Adams, 5 Dana 509, Adams had theretofore obtained a judgment against Ross for $1,300.00. Ross claimed he had more than paid the debt by a delivery of merchandise to Adams, which he had sold in New Orleans; and, in his petition Ross asked a discovery from Adams as to the sale of the merchandise, and that the enforcement of the judgment be enjoined. Upon a disclosure by Adams it was found that Ross was entitled to a credit of only $9.00, and to that extent the injunction was perpetuated; but Adams was given a judgment for his costs.

In declaring the judgment for costs to be erroneous, the court said:

"The decree for costs is undoubtedly unreasonable and unjust; because the injunction having been perpetuated for even a comparatvely small sum, as to which it was necessary to file the bill for discovery and injunction, the complainants were, according to both principle and practice, entitled to a decree for costs, against the defendant, Adams, instead of being subjected to the payment of costs to him."

Likewise, a partner whose unjust conduct makes it necessary for his co-partner to resort to a suit in chancery to obtain a settlement, is liable for the costs of the suit. Moon v. Story, 2 Dana 226.

Appellant would apply this principle to the case at bar, contending that they had the right to bring the suit for a construction of the will, and having obtained that

relief, the costs should have been charged against all the owners of the Board farm, as finally determined by the judgment.

This is, however, a misconception of the true meaning of the rule, and seeks to apply it to a discovery of law, and not to a discovery of fact. The appellants succeeded in no respect as against the appellees. The construction of the will may have been a negative satisfaction to them; but, in contemplation of law, the plain meaning of the will always has been that given it by the court, and as that was contrary to appellants' contention, they, as losers throughout, should pay the costs.

Judgment affirmed.