## Roy, By, etc., et al. v. West, Treasurer.

## Richardson v. West, Treasurer.

(Decided March 3, 1922.)

### Appeals from Jefferson Circuit Court (Chancery Branch, Second Division).

1. Wills—Dying Without Issue—Contingent Remainders.—The testator in one clause of his will said: "If my daughter Emma R. Cosby should die without issue either before or after my death I will and direct that the portion of my estate devised in trust for her shall be held upon the same terms for the child or children of my daughter Lilly Roy, until the youngest child arrives at the age of 21 years or marries; and then it shall be divided among said children as it would descend under the laws of Kentucky." Held, that the interest created thereby in the living children of testator's daughter, Lilly Roy, was a contingent remainder which if in real estate could, under the provisions of section 2341 of the statutes, be sold, but the purchaser would obtain no more absolute title than was possessed by his vendor, and if the absolute title never became vested the purchaser would obtain nothing.

2. Wills—Vested Remainders.—It does not necessarily follow that the owner of a vested remainder has an absolute interest, since the remainder may be defeasible and be defeated upon the happening of an uncertain contingency. In that case the purchaser from the remainderman will obtain no greater estate in the property than that possessed by his vendor, and if the latter's title should be defeated so would that of the purchaser.

3. Wills—Construction.—The above quoted clause of the will is construed to mean that only those children of Lilly Roy, who were living at the time of the death of Emma R. Cosby without issue, or the descendants of any who might then be dead, acquire the absolute title to the property mentioned in the clause; consequently, a mortgage, executed by one of the children of Lilly Roy, and who afterwards died, leaving Emma R. Cosby surviving him, creates no enforcible lien on the mortgaged property in favor of the mortgagee.

W. W. THUM and ALEX. G. BARRETT for appellants.

BASKIN & VAUGHAN and JOHN B. BASKIN for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

The sole question involved in these appeals is the proper interpretation of clause 9 of the will of Edward Cosby, deceased, and of clause 7 of the will of his wife, Mary J. Cosby, deceased. The two clauses are in sub-

stance the same and we insert for the purpose of this opinion clause 7 of the wife's will, which says: "If my daughter Emma R. Cosby should die without issue either before or after my death I will and direct that the portion of my estate devised in trust for her shall be held upon the same terms for the child or children of my daughter, Lilly Roy, until the youngest child arrives at the age of 21 years or marries; and then it shall be divided among said children as it would descend under the laws of Kentucky."

At the time of the death of each of the makers of the two wills they were the parents of two children, Lilly Cosby Roy, and Emma R. Cosby, who has since married a man by the name of Ross. The daughter, Lilly Cosby Roy, and her husband, W. D. Roy, were the parents of four children, Lamar D. Roy, Ed. C. Roy, Lilly R. Windell (nee Roy) and Emma Roy Richardson, who were each above the age of 21 years. On August 27, 1913, Ed. C. Roy, with his brother, Lamar D. Roy, attempted in writing to pledge their interest in the portions of the personal property devised to Emma R. Cosby (by clause 7, *supra*, of the will of Mrs. Cosby, and by clause 9 of the will of Edward Cosby) to George A. Devoe, Jr., as security for a note that day executed to him by W. D. Roy, father of the pledgors, for the sum of $12.600.00 payable five years thereafter. The note, as well as the written pledge, was duly assigned and transferred to the appellee and plaintiff below, Arthur P. West, Treasurer, who filed this action, seeking to subject the personal property so pledged to the payment of his debt, as well as to foreclose a lien on other real estate, but which latter is not involved in this appeal. Emma R. Cosby Ross has no children nor has she ever had any. After the execution of the pledge, and before the filing of the action, Ed. C. Roy died leaving as his only heir and child the appellant. Laura Roy, an infant under six years of age. During the progress of the cause appellants, Emma Richardson and Lilly Windell, sisters of Ed. C. Roy, and Laura Roy, by her mother and next friend, Hannah Roy (widow of Ed. C. Roy), tendered and offered to file their intervening petitions in which they alleged, in substance, that Ed. C. Roy, under clauses 7 and 9 of the wills of his grandmother and grandfather, took only a contingent interest in the property referred to in them, or at most only a defeasible interest therein subject to be defeated by his death before that of Emma R. Cosby, and that he having died leaving

her surviving him, his daughter, the infant, Laura Roy, succeeded to all his rights under the clauses referred to, and that if she should die without issue before the death of the aunt then the other two petitioners, Mrs. Windell and Mrs. Richardson, if then living, would succeed to such rights.    The court sustained objections to the filing of either of the petitions, but they were made a part of the record by order of court, and judgment was rendered foreclosing the lien and ordering. a sale of the personal securities involved, to which the petitioners objected, as they also did to the ruling of the court denying their petitions, and they have each appealed.

Much discussion is indulged in and a large portion of the brief is taken up with an effort to show that the interpretations by this court of the provisions of section 2064 of the Kentucky Statutes, as contained in the cases of Harrington v. Gibson, 109 Ky. 752, and Smith v. Miller, 20 K. L. R. 910, fix the right of the infant, Laura Roy, to the relief which she sought by her intervening petition, *i..e.,* that the words "child or children" in the clauses referred to include a child or children of a deceased child referred to in the clauses of the wills, but whether those cases are sound and should be followed we feel that we need not determine, since we have concluded that there exist other grounds upon which the court should have permitted the petitions to be filed.

There has been in the past much hairsplitting reasoning and metaphysical distinction with the courts, including this one, between a vested and a contingent remainder, and it is sometimes difficult to designate the class to which the particular interest belongs.    There is likewise confusion in some of the opinions, including some from this court, growing out of a failure to distinguish between a vested remainder and a *defeasible* one.    It is sometimes said without qualification, but inaccurately as we think, that a vested remainder interest may be sold or subjected to the debts of the owner, and that those to whom it passes will obtain an absolute title.    But, as we shall see, this is not true where the remainder, though vested, is a defeasible one, and its owner dies before the happening of the event  when the property is to come into enjoyment and the title made absolute.    If the owner of the remainder should live beyond that time and the conditions provided by the instrument creating the estate were then such as to permit him to take, his vendee, or those who otherwise legally obtained his interest, would own the absolute title.

But, if he should die before the happening of the contingency, leaving surviving him any one who, under the terms of the instrument creating the title, would succeed thereto upon the happening of the contingency, then his purchaser, or the one who otherwise acquired his title, would take nothing, since the property would then devolve upon those designated in the instrument to take it at that time. Under the opinions in the cases of Bank of Taylorsville v. Vandyke, 159 Ky. 201; Fulton v. Teager, 183 Ky. 381, and the numerous cases referred to therein, we have no doubt but that the clauses of the wills under consideration gave to the children of Mrs. Lilly Roy only a contingent interest in remainder in the property referred to in each of them because one event upon which the interest was given to them might never happen, i. e., Emma R. Cosby might die leaving issue surviving her, and in that event the estate devised to her would become absolute (it being defeasible as created), and at her death intestate and without prior sale by her, it would descend under the law of inheritance to her surviving issue. Furthermore, under our interpretation of these clauses, only the children of Mrs. Roy, or the issue of such as might be dead when Emma R. Cosby dies without issue, would receive the property at the time of the happening of the contingency and their interest prior thereto would be either contingent, or defeasible, but whichever one, the result would be the same, and we will as briefly as possible discuss these propositions.

We have before seen that the property involved in this appeal is personal property, and whether a contingent remainder interest in that class of property may or not be sold is a question that, to say the least of it, is involved in some doubt; though section 2341 of the statutes, as frequently construed by this court, permits the sale of a contingent remainder interest in real property. But the cases referred to, especially the Vandyke one, and others cited therein, hold that the purchaser of a contingent interest in real property obtains only the same interest as that held by his vendor and that any subsequent happening which would defeat the interest of the vendor would defeat the interest of the purchaser. The death of Ed C. Roy before the happening of the uncertain contingency when his interest in the property in the clauses referred to would become vested and effective (which is, according to out interpretation, the death of the aunt without issue which has not yet hap-

pened), resulted in defeating his interest and, conse-
quently, defeated all rights of his pledgee in and to the
property pledged. Some of the cases referred to in that
case sustaining the above statement of the law are, Gray-
son v. Tyler, 80 Ky. 358, Mercantile Bank of New York
v. Ballard's Assignee, 83 Ky. 481; White's Trustee v.
White, 86 Ky. 602, and McAllister v. Ohio Valley Bank &
Trust Co., 114 Ky. 540. So that, for this reason, we are
thoroughly convinced that the lien of appellee upon the
property involved died with the death of Ed. C. Roy and
he has no legal right to subject it to the payment of his
debt.

But, conceding the interest of the children of Mrs.
Lilly Roy as vested in them by the terms of the clauses
of the wills, then the result would be the same. This
court, without exception, has held that the cardinal rule
for the interpretation of wills is to ascertain from their
entire language the intention of the testator, and to con-
strue and apply their terms in accordance therewith if
they do not contravene any positive rule of law or of
public policy. This statement is of such universal appli-
cation as that it would be superfluous to cite cases in sup-
port of it. When the clauses of the wills under consider-
ation said ''And then it shall be divided among said
children as it would descend under the laws of Kentucky,''
there was clearly manifested an intention on the part of
the makers of the wills that only those persons should
take, who at the time of the division (which could not pos-
sibly be till after the death of Emma R. Cosby), would
be entitled to inherit from Lilly Roy under the laws of
descent and distribution. If, therefore, any of her chil-
dren should die before that time and leave issue then that
issue would take under the wills the share of the deceased
parent. In other words, our construction of the quoted
sentence gives to it the same effect as if the testator had
said ''And then to such children of my daughter, Lilly
Roy, as may be living and to the child or children of any
who might be dead.'' That being true, the interest of any
child of Lilly Roy before that time, though it be regarded
as vested, would be subject to be defeated by its death
before the death of Emma R. Cosby, thus ren-
dering it a defeasible vested interest, the defeas-
ance depending upon the uncertain occurrence of
its being alive at the happening of the time
when the interest would become effective beneficially or in
possession. In such cases the transferee of title or any

interest therein takes it subject to the defeasance. Cases upholding such defeasible nature of the interest and sustaining the views expressed are, Campbell v. Simmons, 138 Ky. 302; Dohn's Executor v. Dohn, 110 Ky. 884; Robb v. Belt, 12 B. Mon. 643; Schneider v. Holzhauer, 134 Ky. 83; Crozier v. Cundall, 99 Ky. 202, Craig's Admr. v. Williams, 179 Ky. 329; the Vandyke case, *supra,* and many others referred to in each of them. Those cases hold that similar phraseology in the deed or will to the one we have adopted as the true construction of clause 7, *supra,* does no more than vest in the named persons, or the members of a named class, a defeasible fee which is defeated by their death before the happening of the contingency provided for; and we have been unable to find any case to the contrary. Indeed, if one such could be found it would not only be lonesome as having but little if any company, but it would be unsupported by any reason or logic or by any underlying principles upon which the law is based. Some of the cases from this court which from a casual reading appear to adopt a contrary view are, Weil v. King, 104 S. W. 382, 31 Ky. L. R. 1010, and Hilger v. Dolle, 18 Ky. L. R. 582. But, an examination of them will show that they only hold that the language there involved created a vested remainder, but whether it was defeasible or absolute does not seem to have been presented or considered. If, however, it was meant therein to say that under such circumstances the remainder interest would be absolute, then they and similar cases should not be followed.

It results, therefore, that the court erred in overruling the motion to file the intervening pleadings and in rendering the judgment subjecting the property involved to the debt of appellee. Wherefore, the judgment against each of appellants is reversed with directions to proceed in accordance with this opinion.

Whole court sitting.