## Masonic Widows' and Orphans' Home and Infirmary v. Hieatt Brothers.

(Decided January 19, 1923.)

### Appeal from Jefferson Circuit Court (Chancery Branch, First Division).

Wills—Remaindermen Not In Esse Bound By Terms of.—Where a will gave land to testator's two daughters "and their children," and in another clause provided for cross remainders should either of the daughters die without children or grandchildren, it was held in a judgment, to which all living persons were parties, that each of the daughters took a life estate with remainder to their children. The judgment so holding was rendered nearly forty years ago. Held, that under the doctrine of "virtual representation" the contingent cross remainderman, under clause eleven of the will, who were not in esse at the time of the rendition of the judgment, are bound by its terms; and a conveyance by the owner of the particular estate and all of her children conveys a good title as against such future cross remaindermen, but it is not binding as against any future born children to the daughters of the testator.

GARNETT, VANWINKLE & SAGER for appellant.

HUGH B. FLEECE, JOHN STITES and ARTHUR M. RUTLEDGE for appellee.

Opinion of the Court by Judge Thomas—Affirming.

The appellant and defendant below, Masonic Widows' and Orphans' Home and Infirmary, is a charitable corporation and appellee and plaintiff below, Hieatt Brothers, is also a corporation. The parties entered into a written contract on April 15, 1922, whereby plaintiff agreed to sell and defendant agreed to purchase a described tract of land containing about 109 acres, situated near the city of Louisville and upon which defendant proposed to erect a home for the widows and orphans of the deceased members of the Masonic Lodge in Kentucky, the agreed consideration being $72,500.00. The entire tract was composed of three smaller ones, each of which was held by a different chain of title. One of them contained 86 acres, more or less, the title to which came through William C. Williams, who died testate and a resident of Jefferson county between January 29, 1880, when his will was executed, and September 20 of the same year, when it was probated. Deeds were duly executed and presented to defendant by plaintiff, but it declined to accept the one conveying the 86 acres upon the ground that the tendered title, under the terms of the will of William C. Williams, was not a perfect one, but it did not question the title to the other two parcels, and it expressly waived the possibility of after-born children to the only two daughters of the testator, one of whom, Mrs. Tyler, is now past 68 years of age, and the other one, Mrs. Fenley, is past 70 years of age.

This action was brought to enforce specific performance of the contract, and upon trial the court granted the relief, and complaining of that judgment defendant has appealed, expressly disclaiming any desire to avoid performance of the contract if the title to the land should be adjudged perfect, and expressly waiving the possibility of after-born children to Mrs. Tyler.

The testator left surviving him his widow, his daughter, Frances M. Fenley, and another daughter, Mary Elizabeth Tyler. By the first clause of his will he gave to his widow a life estate in half of his home place, estimated as containing 90 acres, but which was afterwards found to contain only about 86 acres, and by the second clause he gave his daughter, Mrs. Fenley, another tract of 36½ acres, and in the same clause said: "I also give and devise to my daughter Frances M. Fenley and her children subject to the life estate of my

wife the 90 acres of land containing my dwelling house and improvements devised to my wife for life by the first clause of this will." In the third clause he gave to his daughter, Mary Elizabeth Tyler, "and her children should she have children" what was supposed to be the other 90 acres of the home tract, but which in fact was only about 86 acres. The eleventh clause of the will said: "If either of my two daughters should die without living children or grandchildren, I direct that the property devised to her herein shall go to my surviving daughter and her children and if both of my daughters should die and either of them have no children, I direct that the property herein devised to her shall go to the children of my other daughter."

On January 3, 1881, Mrs. Tyler and her then living husband with their then only living child brought a suit against the widow Williams, Mrs. Fenley and her husband and their then living children, who were all of the persons *in esse*, who had any character of interest under the will of William C. Williams, for the purpose of dividing the home place of the latter and to construe his will so as to properly define the interest which his children and their children took in the described land. The parties, including all infants, were properly before the court and the case was practiced with scrupulous compliance with all required observances. Upon submission a judgment was rendered in the court below in which it was held that Mrs. Tyler and Mrs. Fendley each took the absolute fee to the portions of land devised to them. Those representing the infants appealed the case to this court and the judgment was reversed on May 27, 1884, in an opinion by Chief Justice Hargis, which is not reported in full but in abstract in 5 Ky. L. R. 936-7, in which this court held that Mrs. Tyler and Mrs. Fendley each took a life estate in their respective portions of the land with remainder to their children. In due time a mandate was filed in the court below and it, on November 21, 1884, rendered a judgment in accordance with the opinion of this court by Judge Hargis, after which the parties each took possession of their respective portions and have held them with a continuous recognition of the title as fixed by the judgment up to the time when Mrs. Tyler and all of her living children (none of the deceased ones leaving children), deeded her portion, which is the one involved in this case, to plaintiff. In addition, Mrs. Fenley and all of her living children and grandchildren, whose par-

ents are dead, interpleaded in this case and expressly renounced any interest in the 86 acres involved. They furthermore executed a quit-claim deed to plaintiff, Hieatt Brothers, before it tendered a deed to defendant.

This court in its opinion in the case referred to, a copy of which is filed in the record, did not state therein the reasons for its conclusion, but it is quite possible that it construed the eleventh clause of the will of William C. Williams as fixing the time for the taking effect of the cross remainders therein provided for, as of the date of his death and not at the date of the death of either of his daughters after that time. In other words, that the language of his will comes within that class of cases wherein it is held that the phrase, ''Dying without issue,'' or children, refers to the death of the first taker or life tenant before the death of the testator, and not to the death of the holder of the particular estate at any time; some of the later cases recognizing that construction, because of the conditions, circumstances and peculiar wording of the particular will, are: Hughes v. Covington, 152 Ky. 421; Anderson v. Herrin, 154 Ky. 289; Reuling's Executor v. Reuling, 137 Ky. 637, Bradshaw v. Williams, 140 Ky. 160. There is considerable room for the application of that rule in the construction of the will of the testator in this case, but we do not deem it necessary to determine the question for reasons stated below.

Every lawyer is thoroughly familiar with the ancient and universally recognized doctrine that judgments are binding, after their rendition and while they are in force, upon all parties and privies to the proceedings in which they were rendered; and it is equally well established that contingently interested parties, not *in esse* at the time the judgment was rendered, will be bound by it, under certain conditions, through the application of what is known as ''virtual representation,'' *i. e.*, that while they were not personally before the court, they were so through a representative who was a party of record and whose duties it was to represent subsequent contingent estates as well as their own, because of a common interest in each, and upon whom the law casts the burden of bringing forward the entire merits of the controversy both in protection of his own interest and any future contingent remaindermen not *in esse;* provided, of course, such ''virtual representative'' is free from collusion and fraud in procuring the judgment. An accurate statement of the doctrine is found in 15 R. C. L. 1025, wherein it is

said: "When all the persons in being having an interest in real property are before the court, they may in certain proceedings be regarded as representing those coming after them with contingent interests, and such persons, when they come into being, are considered bound by the judgment against those who thus represent them. Although this doctrine of virtual representation is a rule of the common law, it is founded on convenience and necessity, since to shackle estates without the power of relief, unless every person having a contingent and possible interest could be brought before the court, as a party complainant or defendant, according to the usual forms and ordinary practice of the court, would be to sacrifice the rights and interests of the present generation to those of posterity. All possible parties cannot, as a matter of course, be brought before the court in person, and it would be highly inconvenient and unjust that the rights of all parties in being should be required to await the possible birth of new claimants until the possibility of such birth has become extinct. In accordance with this doctrine of virtual representation, contingent remaindermen and executory devisees not in being may be bound by a judgment when the remaindermen *in esse* are made parties." To the same effect is the text in 23 Cyc. 1245, and to each of the texts are appended a long list of cases from various courts. The text has been adopted and applied by this court in numerous cases, among which are: Hermann v. Parson, 117 Ky. 239; Fritsche v. Klausing, 11 Ky. L. R. 788; Walsh v. Parr's Executor, 33 Ky. L. R. 242, 110 S. W. R. 300; Wayne v. Brumley, 190 Ky. 488, and Ewald's Executor v. City of Louisville, 192 Ky. 279. Some of the foreign cases so holding are Burlingham v. Vancervender, 47 W. Va. 804; Mayer v. Hover, 81 Ga. 308; Hale v. Hale, 146 Ill. 227; Preston v. Brant, 96 Mo. 552; Goebel v. Iffla, 111 N. Y. 170, and Harrison v. Wallton, 95 Va. 721.

The facts in the cited domestic cases are not exactly similar to the ones we have here, but they are sufficiently so to make the principle adopted applicable to the present facts and to thereby fully justify us in applying the doctrine to the facts of this case.

Here we have a judgment which was rendered and has been acquiesced in by all parties *in esse* for nearly forty years. If the contingency provided for under clause 11 of the will of the testator should be construed to take effect at the death of the particular tenant at any

time, then the contingent remaindermen (unborn children of testator's two daughters or grandchildren of the latter), were before the court through the doctrine hereinbefore discussed at the time of the renditon of the judgment and they were necessarily bound thereby. Under the terms of the judgment any children who might hereafter be born to Mrs. Tyler would be entitled after her death to its portion of her tract, but, as hereinbefore stated, defendant expressly waived that possible defect in the title and expressed a willingness to accept it burdened with that possibility; and, since it is the only one affecting the title and plaintiff is willing to risk it, we find no error in the judgment and it is accordingly affirmed.