## Mary G. Gatto, et al. v. Estelle Gatto.

(Decided February 23, 1923.)

### Appeal from Jefferson Circuit Court (Chancery Branch, First Division).

1. Wills—Construction—Intention of Testator.—The cardinal rule for the construction of wills and other writings which has come to be considered the "polar star" for the guidance of the courts is the one which carries out the intention of the executor of the writing as gathered from the language employed and contained in it as a whole, provided such intention is not condemned by the law or any rule of public policy; and that rule prevails over all other technical rules which in former times prevailed at the common law, even at the expense of the expressed intention.

2. Wills—Construction—Intention of Testator—Defeasible Fee.—The testator gave all of his real estate to his wife during her life with

power to sell and reinvest, and at her death to his children, but said that if any child should die before his wife leaving issue, his share should go to his issue. It was further provided in the same clause that "I have unbounded confidence in my beloved wife and I believe that she will manage my property carefully and justly for her own support and for the final benefit of our children." Held, that the employed language plainly indicated the intention on the part of the testator to postpone the distribution of his estate among the remaindermen, his children, until the death of his wife and to postpone the enjoyment of it by them till that time, and that he thereby created in each of them a defeasible fee in remainder subject to be defeated by their dying before their mother leaving no issue, and that neither of them before her death could transmit by will or otherwise an absolute interest representing their share in his real estate and free from defeasance therein provided; hence the will of one of them devising his interest to his surviving wife and who died before his mother without issue was inffective to transmit his interest which at the death of his mother, under the terms of the will, would go to his surviving brothers and sisters and the issue of any who might be dead per stirpes.

EDWARD J. McDERMOTT, for appellants.

HENRY J. TILFORD and O'NEAL & O'NEAL for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

Larry Gatto, Sr., died on April 17, 1910, testate and a resident of the city of Louisville. His will was executed on October 7, 1903, and was probated on May 9, 1910, and the sole question involved in this action is the true construction of its third clause, which says:

"I give and devise to my said wife all my real estate for her sole and exclusive use and benefit during her life free from the rights of any husband she may have, with remainder in fee simple to my children. If any child of mine before my wife's death shall die leaving a child or children, then the share of my deceased child shall go to his child or children. My wife so long as she remains my widow and unmarried, shall have power to sell and convey any part of my estate for purposes of reinvestment in other real estate, but this power shall cease if she marry again. I have unbounded confidence in my beloved wife and I believe that she will manage my property carefully and justly for her own support and for the final benefit of our children."

He left surviving him his widow, the appellant and plaintiff below, Mary G. Gatto, and three children, Larry

Gatto, Jr., William Gatto and the plaintiff and appellant, Arthur Gatto. William Gatto died October 21, 1914, without issue, and Larry Gatto, Jr., died on November 8, 1917, without issue, but he secretly married the appellee, Estelle Gatto, on May 5, 1916, and executed his will on December 4 of the same year by which he devised all of his property to her.

This action was filed in the Jefferson circuit court by the widow and only surviving child of the testator, Larry Gatto, Sr., against the widow of Larry Gatto, Jr., to obtain a construction of the inserted clause of the will of Larry Gatto, Sr., to whom we shall hereafter refer as "the testator." The court construed that clause as contended by defendant's counsel, that it devised to Larry Gatto, Jr., a vested remainder interest in his father's real estate subject to be defeated *only* by his dying leaving surviving issue, in the latter of whom it would become vested under the express terms of the will. Plaintiffs appeal, urging, as they did below, that a correct interpretation of the clause involved, according to recognized and universally applied rules of construction, vested in each of the children of the testator a defeasible fee in remainder in his real estate subject to be defeated by their dying without surviving issue *before* the death of their mother, the life tenant, in which case the surviving children would take the entire property covered by the clause in question, and it is our task to determine which of the two divergent views is the correct one.

It has ever been an elementary rule to be applied by the courts in the construction of wills that the intention of the testator as gathered from the language he employed in his will should be given effect, provided that intention was not one condemned by the law or by some prevailing rule of public policy. That rule has in recent times been more strictly adhered to than formerly; so much so that this and other courts have designated it as "the polar star" by which it would be guided in seeking the intention of the testator to the exclusion of technical rules which were adhered to in some instances under the common law in disregard, or at the expense of, the intention of the testator as expressed by the language he employed. The modified rule, *i. e.*, the one excluding technical ones, when they forced a construction contrary to the one expressed, is not only eminently just but it is the only one to adopt if it be conceded, as must be done, that

it is the function of courts to execute the intention of parties who reduce their desires and obligations to writing. Any other rule would subvert the purposes of such *reduction* and would convert the court into a sort of guardian or supervisor with power, through the operation of technical rules, to set aside the actually expressed intention of the parties and to substitute another supposed one as gathered through the assisting help of an influence furnished by the technical rules which was, perhaps, wholly unknown to the one who executed the writing and which, most likely, he never for an instant regarded while executing it. The justness of the modified rule is emphasized when it is remembered that the majority of wills and other writings are prepared by non-professional and unskilled persons who employ words in their ordinary and common acceptation in order to convey and express the ideas they intended. It, therefore, becomes apparent that the modern rule as above expressed should be applied, and this court in recent years has done so without exception. True it is, that where the expressions used are couched in legal terms having a fixed and definite meaning, and with no qualifying words or phrases, the technical or legal meaning of those terms will be applied; but where such qualifications do appear it is the duty of the court to give the language by which they *are* expressed some meaning which should always be that which was intended by the one employing them and who is presumed, in doing so, to have intended their ordinary and common meaning. What we have said has been so often reiterated by this court that we will not encumber this opinion with the insertion of cases supporting it. In the light of the rule as stated we will now proceed to determine what the testator meant by the language he employed in the third clause of his will.

Some of the confusion, apparent in the cases cited in briefs of counsel, may be removed when we consider the distinction between a contingent remainder and a vested *defeasible* one, since some of them are made to turn upon the technical rule that the law prefers a construction permitting the creation of vested interests rather than contingent ones, and in dealing with and applying that rule vested defeasible interests are sometimes treated as contingent ones, as is pointed out in the cases of Roy v. West, 194 Ky. 96, and others referred to therein. When the distinction between the two is recognized there is no room

for the application of the technical rule referred to and it should have no influence or bearing upon the construction to be given. Clearly (and so much is conceded) the interest, which each child of the testator took under clause three of his will, was a fee and it was vested and not contingent, but it was defeasible, and was, therefore, a defeasible fee; but the difference between the contending litigants is as to what event, or what conditions constituted the defeasance, and that is the question that is to be determined under the rule, *supra*.

In numerous cases cited by appellee, examples of which are Jones v. Thomasson, 159 Ky. 196, and others referred to therein, it was held that under the particular phraseology of the wills involved the remaindermen took an absolute vested fee in remainder upon the death of the testator, and it is insisted that the doctrine of those cases should govern this one, but we find ourselves unable to agree therewith. Some of the cases relied on, in plain and unambiguous terms created a preceding life estate and a remainder interest to named devisees, while in others the remaindermen were members of a class included in the term "children," with no other qualifying words indicating an intention as to when the beneficial vesting of the estate should occur, *i. e.*, whether at the death of the testator, or at the death of the owner of the particular estate. And it is cases of that kind upon which counsel for defendant rely. We have not the time nor the inclination to take up those cases seriatim, and by discussion point out the differences between the wills there involved and the one now under consideration. Suffice it to say, as before stated, that there was nothing in those wills to indicate an intention on the part of the testator that the right of survivorship should apply, whereby the devised remainder interest, which a member of a named class took, should pass to the survivors of that class at the appointed time for distribution and beneficial enjoyment. The testator in this case evidently believed that the right of survivorship existed under the terms of his will and to prevent its application, to the exclusion of surviving issue of one of his children, he inserted the clause, "If any child of mine before my wife's death shall die leaving a child or children, then the share of my deceased child shall go to his child or children." That clause contained the same provisions for the devolution of the devise upon the death of the devisee occurring *after* that of the testator that section 2064 of

the Kentucky Statutes makes with reference to the death of such devisee *before* that of the testator, and it must have been inserted to prevent the otherwise application of what the testator knew was his intention, *i. e.,* that none of his children should ''finally'' become beneficially interested in his real estate except those who survived their mother. It is true, another purpose might also have been in his mind, which was to circumvent the disposition by any of his children of their interest so as to defeat the rights of their children therein, should they have any; but the language is likewise suggestive of the intention above expressed.

Moreover, we find in the clause of the will under consideration this sentence, ''I have unbounded confidence in my beloved wife and I believe that she will manage my property carefully and justly for her own support and for the final benefit of our children.'' If the contention of defendant's counsel be the correct one, that language was not only meaningless but also purposeless, except perhaps to pronounce a eulogy upon his surviving wife. It is sufficient to constitute what is known in law as a precatory trust, and may not, therefore, be considered as only eulogistic. The duty is therein impliedly enjoined upon his wife to manage his property ''carefully and justly'' in order that some ultimate purpose of his might be accomplished, which ultimate purpose was ''the final benefit of our children.'' Evidently, the finality period therein referred to was the one when the intended objects of his bounty would come into possession and enjoyment of their respective portions of his estate and before which time they would have neither possession nor enjoyment (except as voluntarily allowed by the widow), but on the contrary the property should be possessed by the *caretaker,* with the injunction imposed upon her to preserve and justly take care of it so that ''our children,'' or the children of any who might die in the meantime, should enjoy it after her death. Surely, it can not be said, in the light of the language referred to, that the testator intended that his wife should ''carefully and justly'' manage the property during her lifetime so as to preserve it, not for the ''final benefit of our children,'' but for the benefit of any stranger who might fraudulently or otherwise succeed to their rights, or any creditor of a child who might become the victim of youthful improvidence. To forestall any such consequences, and

with the intention that no one but "our children," or the children of any who might die, the testator evidently intended, and it is our interpretation of his will, that his living children at the time of his death should be vested with a defeasible fee in remainder in his real estate subject to be defeated by their dying before the death of their mother, in which case the remaining members of the class would take it, unless the one so dying left issue, in which event such issue would become members of the class who would take their ancestor's share *per stirpes*.

The interpretation above outlined is not in conflict with sections 2348 and 2349 of the Kentucky Statutes. The first one provides that when a joint tenant dies, his interest shall descend to his heirs or pass by devise, or go to his personal representative. In other words, the section intended to dispense with the common law doctrine or survivorship among joint tenants. The latter section provides that the first one shall not apply where the estate is conveyed or devised to persons in their own right "when it manifestly appears, from the tenor of the instrument, that it was intended that the part of the one dying should belong to the others." As we have construed the testator's will, it *manifestly appears from its tenor* that he intended that the part of any one of his children who might die before the expiration of the particular estate should go to the others, conditioned *only* upon the fact that he left surviving issue, in which case it would not go to the others but to such issue. Cases from this court announcing an analogous principle and supporting in a more or less degree the above interpretation are: Harvey v. Bell, 118 Ky. 512; Robb v. Belt, 12 B. Mon. 643; Fulton v. Teeger, 183 Ky. 381; Feltman v. Butts, 8 Bush 115, Schneider v. Holzhauer, 134 Ky. 33, and the Roy case, *supra*.

Having arrived at the conclusion that it was the intention of the testator to create a vested defeasible interest in each of his children, subject to be defeated by their death without issue before the death of their mother, which time he intended to and did fix as the period of distribution, it results that Larry Gatto, Jr., possessed no transmissal interest at the time of or before his death and that his will, under which defendant claims, did not invest her with any interest in the real estate of his father (the testator herein), and that the court erred in adopting a contrary conclusion.

Wherefore, the judgment is reversed with directions to set it aside and to overrule the demurrer to the petition, and for proceedings consistent with this opinion.