## Fischer v. Porter et al.

(Decided March 20, 1936).

JOHN P. McCARTNEY and O. R. BRIGHT for appellant.

B. S. GRANNIS for appellees.

OPINION OF THE COURT BY MORRIS, COMMISSIONER—Affirming.

Henry B. Porter died in September, 1882, leaving a will by which he bequeathed to his wife all of his property durng her life; at her death all the property to be sold at public sale and out of the proceeds one-half plus $600 to go in fee to his daughter, the other one-half to his son Roby S., "subject to the following restrictions and limitations," these being incorporated in the third clause of the will as follows:

"I give and bequeath to my daughter, Lucy Tay-

lor $600.00 and the balance of the proceeds I desire to be equally divided between my said daughter Lucy Taylor and my son Roby S. Porter, the bequest however herein made to my said son Roby S. Porter is made subject to the following restrictions and limitations: He shall hold, use and enjoy the same during his natural life, and at his death his present wife, Margaret Porter, shall continue to hold, use and enjoy the same during her natural life, or so long as she shall remain the widow of my said son Roby S. Porter and upon the death of both of them or the marriage of her the said Margaret, then in that or either event the entire estate herein devised to my said son, shall descend to the children of him and the said Margaret or the descendants of said children.''

It appears that Roby S. Porter, the son of testator, whose wife was Margaret, ''died several years ago,'' and his widow died in July, 1934, without having married again. There were four children born to them, Charles, Allen D., Nannie (now Nannie Hurst), and Henry M. Porter. Henry M. died prior to the death of his mother and father. He left surviving him Cozette Porter (now Armstrong) and Haskell Porter.

Some time prior to November, 1891, one Taylor, executor, filed a suit for the construction of the will, and all the above-named children of Roby S. and he and his wife Margaret were made parties defendant. The suit mentioned is not made part of the pleadings. The judgment of the court rendered at the November term, 1891, is, however, set out in the answer. That judgment in part is as follows:

''It appears that a question has arisen in regard to the construction of a clause of the will of H. B. Porter, dec'd, which clause is set out herein as to whether or not the same created a perpetuity, a construction of same being prayed for herein. Said clause to be construed is as follows, to wit.''

(Then follows so much of the will as is quoted, supra, and the judgment continues.)

"It is adjudged by the court that no perpetuity was created therein, the manifest intention and purpose of the said clause as expressed being to preserve the said property for the said children of Roby S. Porter and Margaret Porter subject to the life estate of Roby S. Porter and Margaret Porter, the said clause investing Roby S Porter with a life estate in said property so devised and at his death a life estate to Margaret his wife if living to be terminated by her death or marriage, with remainder to the children of said Roby S. and Margaret Porter in fee simple. * * *"

Following the judgment above set out, on February 28. 1893, Thomas T. Hughes and wife conveyed to Taylor, as executor of the will of H. B. Porter, the tract of land described in the petition, the undivided one-fourth interest in which is here in litigation.

As to appellant's claimed title to the one-fourth interest in the tract of land involved, it appears from the record that in 1891 John S. Power secured an attachment against the undivided interest of Henry, Jr., which attachment was sustained and his interest sold to Power. Power sold to Lena Prather, she sold to Alice Power, she to John Ryan, and upon Ryan's death, in a suit to settle his estate, the interest was sold by order of the court to James C. Fischer, appellant. None of the court proceedings are filed, except that there is made a part of the answer of appellant a deed executed by the master commissioner on January 29, 1909, by which is conveyed to Fischer one undivided one-fourth interest "in remainder" in the tract of land in question, "being the same land conveyed to John S. Power by the Commissioner in the suit of John S. Power v. Henry M. Porter et al."

On August 13, 1934, after the death of their mother, Allen D. and Nannie Hurst (children of Roby and Margaret) filed the present suit, in which they set out that they and Charles Porter are "each the owners of an undivided one-fourth interest" in the tract of land in question.

The petition alleges that Roby S. Porter died "a number of years ago," and that Margaret, his wife,

died in July, 1934; that Henry, Jr., died prior to the death of either of them, leaving two children, Cozette Porter Armstrong and Haskell Porter, and that they (Cozette and Haskell) or James C. Fischer own the remaining one-fourth interest. All of these last named are made parties defendant.

The petition then sets out the execution of the will of Henry M. Porter and filed·copy of the will as an exhibit, and alleges in terms the provisions thereof, also alleging pleaders' contention that the express provision of the will was that Roby S. Porter's portion of the estate was to descend to Roby's children, "or if any of them be dead leaving children, their share should vest in such children." They then allege that Fischer is asserting a claim of title to the undivided one-fourth interest, and that they do not undertake to say whether Fischer is the owner of the share of Henry M. Porter, deceased, or whether his two children became the owners on the death of Henry, Jr., but ask that the question of title be cleared. It is then alleged that the land is not subject to division without impairment, etc., and pray for a sale and division of proceeds.

Appellant, the claimant of the undivided one-fourth interest of Henry M. Porter, answered by alleging that he was owner by reason of commissioner's deed conveying that interest to him on January 28, 1909. In a second paragraph he sets out the death of Henry M. Porter; the probate of the will; the qualification of the executor; the suit by the executor asking a construction of the will, to which suit Allen, Charles, Henry, Nannie Porter Hurst, and Roby S. and his wife Margaret were parties; and the subsequent deed of trust. He then pleads the judgment, supra, construing the will, and directing Roby S. Porter's part of the estate invested, with life estate to him, life estate to his widow, and remainder in fee simple to the children of Margaret and Roby S., and relies upon said judgment "as a full, correct and absolute construction of the will of Henry B. Porter.'

After filing of the answer, Haskell Porter and Cozette Porter Armstrong moved that their names be stricken as defendants, and sought to be made parties plaintiff, which motion was sustained, and in a joint petition and answer they say that they are the only

children, descendants, and heirs at law of Henry Porter, Jr., who died prior to the deaths of their grandfather and grandmother, Roby S. and Margaret Porter, and that as such children they are the owners of and entitled to the share which would have belonged to their father, Henry Porter, Jr. They ask that Fischer's claim be disallowed, and that the cloud which the pretended deed from the master commissioner casts upon their title be removed. They join in the prayer for sale, and distribution of the proceeds.

By amended answer appellant, pleading as originally further alleged that while neither of Henry, Jr.'s children were in being at the time of Henry B. Porter's death, nor at the time of the judgment construing the will, Henry, Jr., was a party to the suit, represented by counsel, and this being true the* two children were bound by the judgment construing the will, and since the judgment has never been vacated or modified they remain bound, because of virtual representation by their father.

Upon submission the demurrer of appellant to the petition of Haskell and his sister was overruled and their demurrer to the appellant's answer as amended was sustained, whereupon viewing the pleadings and exhibits, the court adjudged that the one-fourth interest devised by testator "which would have belonged to Henry, Jr. had he outlived his parents, belongs to Haskell Porter and Cozette Porter Armstrong," thus annulling appellant's deed, and from which judgment he appeals.

The record does not show just what was undertaken to be conveyed in the Ryan suit. Whatever interest Henry, Jr., did have in the land could be conveyed, and was subject to attachment and execution and sale. Ky. Stats. 1930, secs. 1681 and 2341, cases thereunder cited, and Fulton v. Teager, 183 Ky. 381, 209 S. W. 535; Roy v. West, 194 Ky. 96, 238 S. W. 167.

The questions to be determined here are: First, what was the intention of the testator with regard to the disposition of the trust estate after the death of the life tenants; and, second, was there virtual representation of the unborn children by the appearance of the father in the first action? In reaching a determin-

ation of these questions we adhere to the rule that in ascertaining the intention of the testator we must look to the will in its entirety, not selecting one paragraph, or some words of a paragraph, without observation of other paragraphs or words, when necessary for a definite conclusion. Wintuska v. Peart, 237 Ky. 666, 36 S. W. (2d) 50; Linder v. Llewellyn's Adm'r, 190 Ky. 388, 277 S. W. 463; Whicker v. Strong, 258 Ky. 135, 79 S. W. (2d) 388.

It has been pointed out that there were two life estates created, one to Roby S. Porter, another to his wife, to terminate upon death of each or death of Roby S. and remarriage of his widow, and referring to the terminating happenings the will reads:

"And upon the death of both of them or the marriage of her the said Margaret, *then* in that or either event the entire estate herein devised to my said son, shall *descend* to the children of him and the said Margaret, *or the descendants of said children.* * * *"

It is further noted that the testator was particular in throwing a safeguard about the portion thus devised, since one of the "restrictions" or "limitations" was that such portion should not be chargeable with any debt of either life tenant, but should be "preserved for the use and benefit of their children," requiring investment and reinvestment for the purposes therein named.

When we read all of clause 3 of the will, we must give some consideration to the words "then and in that or either event," and "shall descend," used in connection with the life estate terminating happenings. These words evidence a fixed purpose and intention to definitely designate the time when the life estate should terminate and vesting occur.

Clause 3 of the will is so written that it is easily determinable that it was the intention of the testator to postpone the final vesting of the estate in those who might take under the will, until the close of the life estates, thus creating a defeasible fee in remainder, or a contingent remainder, subject to be defeated by the remainderman's death prior to the death of the life tenant. Where the language indicates a purpose

to or fixes the time of the vesting of the remainder estate, even though the remainderman be designated as children, it is the rule that the intention of the testator should be carried out in the construction given the instrument. Kendrick v. Scott, 200 Ky. 202, 254 S. W. 422; Gatto v. Gatto, 198 Ky. 569, 250 S. W. 833.

This court recently had for construction a will wherein there was created a life estate with remainders to several devisees. In that will, providing for the disposition of the remainder estate, the testator used the word "vest" in some clauses and the word "descend" in others, and likewise used the words "surviving children or their descendants." We refer to the case of Goodpaster v. Catlett, 260 Ky. 826, 86 S. W. (2d) 1028, 1031, wherein this court reviewing a number of cases gave a clear distinction between a vested and contingent remainder. Without going to great lengths, we quote so much thereof as seems conclusive of the questions here for determination:

"It must be noted that the devise to Mrs. Owings was to 'vest in her children and their descendants equally'; that of Janela Gatewood is 'to descend to her children equally'; Mrs. Elva Catlett's 'to descend to her children equally'; Mrs. Turney's 'to be held in the same manner as the devise made to Mrs. Owings'; Mrs. Gaitskill's 'to be held by her in the same manner as my other daughters'; Bettie Poyntz' 'to be held in the same manner as my other daughters.' Whilst he used in the clause devising to Mrs. Owings the word 'vest,' in the devise to Mrs. Gatewood he used the word 'descend,' but in every clause the time fixed for the devise to 'vest' or 'descend' to the children of the devisee and their descendants was at the death of the devisee of the life estate. The language of the several clauses, whether the property thereby devised is specific real estate or money, or both, clearly establishes the testator's intention to devise to each of his daughters a life estate in the land or the money, or both, and at the death of each daughter the land, money, or both, devised to each of them, should 'vest' in or 'descend' at her death to the testator's surviving children, and their descendants, subject to be defeated by her

and/or their death without issue before the death of the life tenant. Smith v. Thom, 158 Ky. 655, 166 S. W. 182; Ford v. Jones, 223 Ky. 327, 3 S. W. (2d) 781, and Roy v. West, Treasurer, 194 Ky. 96, 238 S. W. 167.''

With this rule of construction as applied to the language which fixes the time when the estate should vest after cessation of the life estate, and considering other pertinent words used, it seems that testator clearly intended that upon the death of the life tenants the title should vest in the children of Roby and Margaret Porter, if living, or, if dead, then that share of such should vest in the child or children of such deceased child. We have little doubt from a reading of the entire will, or the third clause, that the word ''descendants'' was intended by the testator to mean children. Tichenor v. Brewers' Ex'r, 98 Ky. 349, 33 S. W. 86, 17 Ky. Law Rep. 936. There is nothing in the will to indicate an intention to create a perpetuity, nor is there any evidence of intent to do otherwise than to make an equal distribution of the remainder estate, which would result if the word ''descendant'' should be given its strictly technical meaning. Technical rules of construction give way to the intention of the testator, which must govern wherever such intention can fairly be ascertained. Wickersham v. Wickersham, 174 Ky. 604, 192 S. W. 688.

We are of the opinion that the chancellor, in deciding as he did in the instant case that Haskell Porter and Cozette Armstrong were the owners of the one-fourth interest devised to Henry, Jr., gave clause 3 of the will the correct construction.

It follows from the conclusion we have expressed above, and from the fact the court in construing the will of testator (in the original case) to mean that Henry, Jr., took a fee-simple estate, the doctrine of virtual representation is not applicable here.

Counsel for appellant rely mainly on the case of Masonic Home v. Hieatt Bros., 197 Ky. 301, 247 S. W. 34, which defines the doctrine of virtual representation therein upheld, the facts in that case showing that it was correctly applied; but when the case is carefully read it will be observed that it was not intended

to apply to every case where the living parties were before the court, to the extent of binding others in interest then not in esse. The court, while giving the rule sanction, pointed out that it was only under "certain conditions" that a remainderman might thus be bound. In Middleton v. Graves, 229 Ky. 640, 17 S. W. (2d) 741, relied on by appellant, the rule was applied because the interests of the parties actually before the court were identical with those of after-born and contingent remaindermen.

It is not difficult to determine that in this case, under the construction given the will by the court first construing the will, and the later construction given by the lower court, that there was and is no identity of interest. Henry, Jr., in his appearance before the lower court must have contended that he was entitled to a fee-simple interest; the court so held, and the effect was to divest any after-born children of any interest; hence he was not representing them, nor could he have taken such position and fairly represented them. Bunch v. Bunch, 207 Ky. 504, 269 S. W. 519, where the doctrine was upheld, is distinguishable from the case at bar. Here there is and was a conflict of interests.

In Lowe v. Taylor, 222 Ky. 846, 2 S. W. (2d) 1042, 1044, a recent decision on the question of virtual representation and where the doctrine was not applied because of an apparent conflict of interest, the court said:

"But in all cases, the doctrine is planted squarely on the ground of identity of interest between the parties to the action and the persons they are held to represent. It being recognized throughout that, if such identity of interest does not exist, such representation cannot be had, and especially is this true where there is a conflict of interest."

Quoting from 15 R. C. L. 1026, to the effect that if, under the actual facts of the case, the interest of unborn remaindermen are antagonistic to such parties as assumed to represent such interests, the remaindermen will not be concluded by a judgment, this court cited many cases from other jurisdictions, and concluded in denying the application of the doctrine, saying:

"To hold otherwise would deny a litigant his day in court, and offer a temptation to life tenants to confiscate contingent estates; would close the door to unborn remaindermen; and lend the aid of the courts to spoliation and fraud. This cannot be done even though no fraud be intended in the instant case."

Having concluded as expressed above, we are of the opinion that the court in the instant case correctly construed the will of the testator, and held the children of Henry, Jr., to be entitled to the interest which would have been his in case he had outlived the life tenant.

Judgment affirmed.

The whole court sitting.