## Kendrick v. Scott.

(Decided June 1, 1923.)

### Appeal from Pike Circuit Court.

1. Wills—"Heirs" Cannot be Given Colloquial Meanings to Vest Estate Contrary to Testator's Intention.—The rule that the law favors the vesting of estates and will give the word "heirs" the meaning it frequently has colloquially as "children," if so intended by testator, does not apply where the legal significance of the term "heirs" conforms to the evident purpose of the testator, in which case the established legal meaning will be adopted.

2. Wills—Intention Should be Ascertained from Entire Instrument.— The court should look to the entire will for the purpose of ascertaining testator's intention.

3. Wills—Codicil Held to Show Remainders Were Given to Heirs, Not to Children.—Where the will gave property to testator's daughter and her children, a codicil, stating that testator intended thereby to give the daughter the lands for her natural life, and at her death to descend equally to the heirs of her body in fee simple, showed that testator understood the distinction between the terms "children" and "heirs of the body," and that he used the latter term with its legal meaning.

4. Wills—Remainder to Heirs of Life Tenant is Contingent.—A gift of remainder after life estate to the heirs of the body of the life tenant creates a contingent remainder though a devise over to the children of the life tenant would give them a vested remainder.

5. Wills—Purpose of Testator to Make Remainder Defeasible on Remainderman's Death Before Life Tenant Will be Carried Out.— Where the will and codicil indicate a purpose on the part of testator to postpone the vesting of his estate among the remaindermen until the death of the life tenant thereby creating in each of the remaindermen a defeasible fee in remainder subject to be de-

feated by his death without issue before the death of the life tenant the intention of the testator must be carried out.

6. Remainders—Conveyance by Contingent Remainder Before Death of Life Tenant Passes no Interest.—A deed executed by a contingent remainderman before the death of the life tenant does not pass any interest and therefore subsequent deed by the grantee, conveying only the interest received under the former deed, conveys nothing.

7. Estoppel—Conveyance of Grantor's Interest Does Not Convey After-Acquired Property by Estoppel.—The rule that conveyance with general warranty by a grantor who had no title will convey by estoppel a title subsequently acquired by the grantor does not apply, where the original conveyance covered only the grantor's interest received under a deed from a contingent remainderman which conveys nothing.

8. Remainders—Interest of Contingent Remainderman During Life Tenant is Not Alienable.—A contingent remainderman has no alienable interest during the life of the life tenant.

9. Mortgages—Evidence Held to Support Contention Deed was Intended as Security.—In a suit to quiet title, evidence that the property was worth more than the consideration stated in a deed to plaintiff's grantor, that the interest under which plaintiff claimed passed to him by estoppel under a former deed from the grantor, and that the grantor thereafter reconveyed the property to the one from whom he received it, held to sustain contention that the conveyance to the grantor was intended only as security for an indebtedness.

STRATTON & STEPHENSON for appellant.

AUXIER, HARMAN, FRANCIS & HOBSON for appellee.

OPINION OF THE COURT BY JUDGE MOORMAN—Reversing on original appeal but affirming on cross appeal.

This action was instituted in the Pike circuit court by appellee, John Scott, to quiet the title to a one-twelfth undivided interest in a tract of land on Chloe creek, Red creek and Sandy river, in Pike county. His claim of title is based on the will of Colonel John Dils, Jr., a wealthy landowner in Pike county, who died in the year 1895. Clause 1 of the will reads:

"First: I will to my daughter, Georgia Ann Adams, the wife of A. E. Adams, and to her children, all the lands known as the Wm. Adkins farm and back lands on upper Chloe and Red creeks and the river excepting the lands above the main forks on Red creek, from a marked beech by a big rock on the right hand side of said creek, the line is to be to the top of the hill on each side of said creek running up the point from the beech and rock on the

right and on the opposite point on the left to the top of the hill, all other lands I own in said purchase is to be hers and her children."

A codicil to the will, relating to this controversy, provides:

"First: I intended in paragraph one and so bequeath to my daughter, Georgia Ann Adams, wife of A. E. Adams, the lands described in said paragraph and which she shall hold during the term of her natural life and at her death it shall descend equally to the heirs of her body in fee simple."

At the time of Colonel Dils' death Georgia Ann Adams had three children, John D. Adams, Anna E. Young and Minnie Kendrick. John D. Adams shortly thereafter died, and in the settlement of his estate Anna E. Young purchased whatever interest he had in the property devised under the will and codicil referred to. Georgia Ann Adams did not die until April, 1920. Prior to that date Minnie Kendrick had died, leaving three children, two of whom had also died. One of the latter, John D. Kendrick, died after attaining his majority in 1918. In April, 1913, he had conveyed by general warranty whatever interest he had in the land to Ora Kendrick. Thereafter, on April 30, 1915, Ora Kendrick and her husband, George D. Kendrick, conveyed to appellee, John Scott, one-half of such interest as they had obtained from John D. Kendrick. When Georgia Ann Adams died in 1920, she left two heirs at law, Anna E. Young, her daughter, and Ewing A. Kendrick, the only surviving child of Minnie Kendrick. Appellee, John Scott, claiming a one-twelfth interest in the land devised to Georgia Ann Adams, instituted this suit against Ewing A. Kendrick to quiet the title. Anna E. Young was made a party defendant, and she asserted claim to a two-thirds undivided interest in the land. The lower court held that she owned a one-half undivided interest, Ewing A. Kendrick owned a five-twelfths undivided interest, and the appellee, Scott, a one-twelfth undivided interest. Kendrick has appealed, and John Scott has filed a cross appeal.

It is contended by appellee that Colonel Dils devised the land, under the provisions referred to, to Georgia Ann Adams for life, with the remainder "to the heirs of her body," which, properly construed, means her children, who took a vested interest in remainder, while it is insisted by appellant that the interest taken by the heirs of Georgia Ann Adams was a contingent remainder,

subject to be defeated by their death before the death of the life tenant. The latter construction was adopted by the trial court, but the claim of appellee to an undivided one-twelfth interest in the land was upheld. The record does not show the ground for sustaining that claim, but we learn from briefs of counsel that the ruling was based on a deed from Ewing A. Kendrick to George D. Kendrick of December 12, 1919.

It is argued on the cross appeal that the remainder created under clause 1 of Colonel Dils' will, with the explanatory codicil, was vested. Pressing that point, counsel for appellee say the law favors the vesting of estates, and that the term "heirs of her body" has a colloquial meaning of children, as well as a technical meaning, both of which are recognized by the law, and, inasmuch as the law favors the vesting of estates, if it appear that the testator used the term in the colloquial sense of "children," the instrument should be given the meaning that would have resulted from the use of the latter term. This is a correct statement of an established rule of construction, but nevertheless the rule is never applied unless it be necessary to effectuate the intention of the testator. Hence if the term used has a legal significance which conforms to the evident purpose of the testator, the established legal meaning will be adopted. It is likewise true, as contended by appellee, that the court should look to the entire will with the view of ascertaining the testator's intention.

It will be noted that by clause 1 of the will the testator gave to his daughter, "Georgia Ann Adams, the wife of A. E. Adams, and her *children*, all the lands known as the Wm. Adkins farm," etc. If this language alone were to be construed there would be no question of a contingent remainder, since it creates a vested estate. But by the codicil executed on August 22, 1891, the testator said: "In order that paragraph No. 1, two and three, shall fully and plainly express my desire, I add this codicil." Then follows: "I intended in paragraph one and so bequeath to my daughter Georgia Ann Adams, wife of A. E. Adams, the lands described in said paragraph and which she shall hold during the term of her natural life and at her death it shall descend equally to *the heirs of her body* in fee simple." Here the testator explained the purpose of clause 1 of his will, showing it was his intention that the land should go to his daughter for the term of her natural life, and at her death it should descend equally,

not to her children, but to the heirs of her body in fee simple.

The rule, as stated in Jones v. Thomasson, 159 Ky. at page 200, is ''that where the devise over is to the children of the life tenant, although they may not be named, or to the children, naming them, they take a vested estate in remainder; but if the devise over is to the 'heirs' of the life tenant unless the word 'heirs' means children, the heirs take only a contingent remainder subject to be defeated by their death before the death of the life tenant.'' Many authorities are cited in support of this doctrine, among them Williamson v. Williamson, 18 B. Monroe 329; White's Trustee v. White, 86 Ky. 602; Leppes v. Lee, 92 Ky. 16; McAllister v. Ohio Valley Banking & Trust Co., 114 Ky. 540. Other cases sustaining it are Bank of Taylorsville, etc. v. Vandyke, 159 Ky. 201; Runyon v. Hatfield, 154 Ky. 171; and Turner, etc. Johnson's Executors, 160 Ky. 611.

It is true that the terms ''heirs'' and ''heirs at law'' have in several cases been construed by this court as meaning children. But in every such case it was clear from the instrument that the testator used the term in the sense of children. That does not appear from this instrument. Furthermore, in this case the testator used the word ''children'' in the will, but when he came to explain his intention in respect to the devise in question he used the words ''heirs of her body,'' clearly indicating that he understood the difference in the terms.

Again the first clause of the codicil is so framed as to indicate the purpose on the part of the testator to postpone the vesting of his estate among the remaindermen until the death of his daughter, thereby creating in each of the remaindermen a defeasible fee in remainder, subject to be defeated by the remainderman's dying without issue before the death of the life tenant. Where the language indicates such a purpose, even though the remaindermen are designated as children, it is the rule that the intention of the testator must be carried out in the construction given to the instrument. Gatto, etc. v. Gatto, 198 Ky. 569. We conclude, therefore, that the trial court was right in holding that the remainder interests were contingent, and Anna E. Young and appellant being the surviving heirs at law of the life tenant, Georgia Ann Adams, they each took an undivided half interest in the fee.

But it is contended that John Scott has a valid claim under the various deeds introduced in evidence, the first

of which is the deed from John D. Kendrick to Ora Kendrick in 1913. That deed, having been executed before the death of the life tenant, did not pass any interest in the land to Ora Kendrick. About two years after it was executed Ora Kendrick and her husband, George D. Kendrick, conveyed such interest as they acquired thereunder to John Scott. As no interest was acquired by the grantors under the deed from John D. Kendrick, none passed to Scott. On December 12, 1919, Ewing A. Kendrick conveyed to George D. Kendrick such interest as the former had in the land theretofore conveyed by John D. Kendrick to George D. Kendrick. That deed is said to estop Ewing A. Kendrick from claiming any part of the one-twelfth interest that John D. Kendrick attempted to convey to Ora Kendrick, and that Ora Kendrick and her husband, George D. Kendrick, attempted to convey to Scott. To meet this contention appellant says that the deed of December 12, 1919, was made to secure George D. Kendrick in an indebtedness due him from the grantor and his deceased brother. It appears that in the following year both George D. Kendrick and Ora Kendrick reconveyed the land to Ewing A. Kendrick, that is, attempted to reconvey such interest to Ewing A. Kendrick as he had endeavored to convey to George D. Kendrick on December 12, 1919.

Many authorities are cited by appellee to the effect that, if the grantor has no title or a defective title to an estate that he assumes to convey with covenant of general warranty, and subsequently acquires the title which he purported to convey, the after acquired title will inure to the benefit of the grantee by way of estoppel. The rule cannot be invoked in this case because the deed of Ewing A. Kendrick purported to convey only such interest as he then had in the interest conveyed by John D. Kendrick. It was in fact a quitclaim against the deed of John D. Kendrick, and nothing more. John D. Kendrick had no interest to convey, and appellant is not claiming under his deed but as a devisee under the will. Besides, when the deed of December 12, 1919, was made the life tenant was living and Ewing A. Kendrick had no alienable interest in the estate of his grandfather. Furthermore, as John D. Kendrick conveyed no interest whatever, no title can devolve from his deed, and necessarily, therefore, not from a quitclaim against his deed.

There is evidence in the record tending to show that, if John D. Kendrick had survived the life tenant, his remainder interest would have been worth much more than

the amount paid to him by George D. Kendrick. When that deed was made the parties were dealing at arm's length, and the grantee took the chance of the contingent remainderman's dying before the life tenant. Moreover, the fact that George D. Kendrick and Ora Kendrick reconveyed the property to Ewing A. Kendrick less than a year after the deed of December 12, 1919, was executed corroborates the contention of appellant that the conveyance was originally made by him merely to secure an indebtedness, and that the reconveyance was made under the belief that the security was unnecessary and the indebtedness would be paid. In these circumstances we can not hold that the deen of December 12, 1919, operates to deprive appellant of any interest to which he is entitled under the will. In this respect the judgment is erroneous. It is reversed on the original appeal, but affirmed on the cross appeal.