## Inter-Mountain Coal & Lumber Co. et al. v. Boggs.

(Decided Jan. 27, 1933.)

124

J. G. BRUCE and WILLIAM SAMPSON for appellants.

B. M. LEE for appellee.

OPINION OF THE COURT BY JUDGE REES—Affirming.

The appellant, Inter-Mountain Coal & Lumber Company, owns several large tracts of land in Harlan county and is engaged in the business of cutting and manufacturing into lumber the timber thereon. The appellee, Bishop Boggs, has been engaged in the logging business for a number of years and has been employed from time to time by the appellant and its predecessors in title over a period of more than 30 years. The appellant and appellee entered into a written contract on February 20, 1928, in which it was stated that each party to the contract claimed to be the owner in fee simple of a tract of land containing 94.2 acres located on the waters of Big Laurel creek in Harlan county and that Boggs desired to cut and sell to appellant all of the merchantable sawlogs and timber on this tract of land and appellant desired to purchase the timber if Boggs owned the land. It was agreed that Boggs should cut and remove all of the merchantable timber on the land and deliver it to the appellant along the latter's railroad, which it had constructed through the disputed land by agreement with Boggs for the purpose of removing timber from other tracts of land owned by appellant. Boggs was to receive a stipulated price for cutting and delivering the timber, and it was further agreed that in the event an investigation disclosed that Boggs was the owner of the land appellant would pay him $4 per 1,000 feet for all the timber cut and delivered by him as the stumpage value of the timber. The contract further provided that the lumber company would at once bring a suit in equity in the Harlan circuit court against Boggs to quiet its title to the land, both parties to be bound by the final judgment in the case.

Boggs cut and delivered 346,155 feet of timber, and appellant paid him the price stipulated in the con-

tract for cutting and delivering the timber but failed to pay him the stumpage value of the timber which was stipulated in the contract to be $4 per 1,000 feet. Appellant also failed to institute suit in the Harlan circuit court to test the title to the land, as the contract provided, and on September 20, 1929, Boggs brought an action against the Inter-Mountain Coal & Lumber Company to recover the sum of $1,384.62, the stumpage value of the timber taken from the tract of land in dispute. He had completed his contract to cut and deliver the timber on July 1, 1928.

The lumber company filed an answer, counterclaim, and cross-petition and brought into the case two new defendants, A. B. Cornett and D. B. Cornett, who had conveyed the land on December 17, 1910, to a predecessor in title of the Inter-Mountain Coal & Lumber Company. In its answer and counterclaim it alleged that it was the owner in fee simple of the tract of land from which the timber had been taken and it set out its chain of title. Appropriate pleadings completed the issues, and the case by agreement was transferred to the equity docket. The value of the timber is not disputed and the only issue in the case is the ownership of the land.

The chancellor who heard the case found that Boggs was the owner of the land and rendered judgment against the Inter-Mountain Coal & Lumber Company in the sum of $1,384.62, with interest from July 1, 1928. Judgment was also rendered for a like amount against A. B. Cornett and D. B. Cornett in favor of the Inter-Mountain Coal & Lumber Company upon its cross-petition. From that judgment the defendants have appealed.

The tract of land in dispute is part of a 200-acre survey patented by David Turner, Jr., in 1860, and it is conceded that the tract in controversy contains 88 acres. Boggs and the Inter-Mountain Coal & Lumber Company both claim title to the land under a common grantor, Isaiah Metcalfe, to whom it was conveyed in 1889. Isaiah Metcalfe conveyed it to the Asher Lumber Company on April 22, 1890. The corporate name of the Asher Lumber Company was changed to the Burt & Brabb Lumber Company on June 15, 1896. On July 22, 1908, Burt & Brabb Lumber Company conveyed the land to A. B. Cornett, and on December 17, 1910, A. B.

Cornett and D. B. Cornett conveyed it to the Harlan Coal & Land Company and that company conveyed it to the Kentweva Coal & Lumber Company on December 20, 1911. The Kentweva Coal & Lumber Company conveyed it to the Inter-Mountain Coal & Lumber Company on May 20, 1916. A. B. Cornett and D. B. Cornett own substantial interests in the Inter-Mountain Coal & Lumber Company, and it appears that in its corporate set-up it is substantially the same as its corporate predecessors in title beginning with the Asher Lumber Company and that the name of the corporation was merely changed from time to time.

Boggs claims that he obtained title to the land in the following manner: On September 11, 1895, an execution under a judgment against Isaiah Metcalfe was levied on the land, and on December 18, 1896, it was sold under this execution and conveyed by Grant Smith, sheriff of Harlan county, to A. B. Cornett. On the same day A. B. Cornett and wife conveyed it to Jonathan L. Creech. On February 4, 1899, Jonathan L. Creech executed a title bond to his son, John H. Creech, and on September 17, 1906, John H. Creech and wife conveyed it to Bishop Boggs. All of these deeds conveyed the 200-acre David Turner, Jr., patent. On December 4, 1911, Boggs and wife conveyed all of the David Turner, Jr., patent to A. B. Cornett and D. B. Cornett, except the 88-acre tract here in controversy.

It is clear that no title passed to A. B. Cornett by the sheriff's deed of December 18, 1896, as the land had passed out of Isaiah Metcalfe when it was levied upon in September, 1895. When A. B. Cornett conveyed the 200-acre tract of land to Jonathan L. Creech, he only warranted to convey such title as he received under the sheriff's deed. When he later obtained title to the land under a general warranty deed from the Burt & Brabb Lumber Company, his title did not inure to the benefit of the successors in title of Jonathan L. Creech. His deed to Creech contained no covenant of general warranty but only purported to be a quitclaim deed. When a deed contains a covenant of general warranty, the title subsequently acquired by the grantor inures to the benefit of the prior grantee so as, by operation of law, to pass the legal title to him; but this rule does not apply where a deed contains no covenant of title and the grantor had no title. Johnson v. Johnson, 173 Ky.

701, 191 S. W. 672; War Fork Land Company v. Carr, 236 Ky. 453, 33 S. W. (2d) 308; Altemus v. Asher, 74 S. W. 245, 24 Ky. Law Rep. 2416; Beard v. Griggs, 1 J. J. Marsh, 22; Kendrick v. Scott, 200 Ky. 202, 254 S. W. 422.

It is apparent that the Inter-Mountain Coal & Lumber Company has a superior paper title to the land in controversy. Boggs, however, pleaded and relied upon an estoppel in support of his claim to the land and this involves purely a question of fact. Boggs testified that shortly before he purchased the 200-acre tract from John H. Creech, he had a subcontract to log the timber from appellant's land adjoining this 200-acre tract. Mr. James H. Jeffries was then the manager and representative in Harlan county of the Burt & Brabb Lumber Company, appellant's predecessor in title.

In order to float the logs cut from the Burt & Brabb Lumber Company's land it was necessary for Boggs to construct a splash dam. He went to Mr. Jeffries and asked the latter to locate a point on the Burt & Brabb Lumber Company's land where the splash dam could be built, and Mr. Jeffries informed him that if he built it within one-quarter mile of Phillip Metcalfe branch it would be on the company's land. He built the dam within 100 yards of the branch at a cost to him of $1,000. It was built on a part of the 200-acre David Turner, Jr., survey but not on the 88 acres here in controversy. After he had built the splash dam, John H. Creech notified him that it was on his land and he went to Mr. Jeffries and requested that the Burt & Brabb Lumber Company buy the 200-acre tract to protect him. Mr. Jeffries later reported to him that it had taken the matter up with the Burt & Brabb Lumber Company and that the company did not desire to get into litigation over the title to the land and did not desire to buy more land and suggested that Boggs should buy it. Boggs thereupon borrowed $150 and purchased the land from Creech. He built a house on the land and was still living there when this suit was instituted though as a tenant of appellant. He sold all of the 200-acre tract except 88 acres to A. B. and D. B. Cornett in 1911, but he has continued to claim the title to the 88 acres.

Mr. Jeffries testified that he was general manager and agent of the Burt & Brabb Lumber Company in Harlan county at the time Bishop Boggs built the splash dam in question and that he has continued to represent that company and its successors in the same capacity and also as attorney. He admitted that he pointed out to Mr. Boggs the boundary of land owned by the Burt & Brabb Lumber Company and that the boundaries so pointed out included the David Turner, Jr., 200-acre patent upon which the splash dam was built; that he later learned that the company did not own that part of the David Turner, Jr., patent upon which the splash dam was located. He testified that he had no recollection of having told Mr. Boggs that the Burt & Brabb Lumber Company had authorized him to say that it did not own or claim the 88-acre tract, but he did state to Mr. Boggs that the company no longer claimed that portion of the 200-acre tract which lay south and east of the 88-acre tract and that Mr. Boggs could buy it if he wanted to do so.

Both Mr. Boggs and Mr. Jeffries testified with commendable frankness, and we are convinced that each stated the facts as he remembered them after a lapse of nearly 30 years. The attending circumstances seem to support Mr. Boggs' recollection of the transaction. John H. Creech was claiming and offering to sell all of the 200-acre tract, including the 88-acre tract here in dispute, and Mr. Boggs was unable to purchase that portion of the tract upon which his splash dam was located without purchasing all of it and he was compelled to make the purchase to protect the investment that he had made at the direction of a representative of the Burt & Brabb Lumber Company. No one questioned his title to the land until shortly before this suit was instituted. The appellant apparently recognized his title over a long period of years. It acquired title to all the adjoining land and cut the timber to the lines of the 88-acre tract on four sides. On two occasions it cut timber over the line on the 88-acre tract and on complaint made by appellee it paid him for the timber. In 1927 it desired to cut timber on a tract adjoining the tract in dispute and for the recited consideration of $1 obtained the right from appellee to construct a logging railroad over the 88-acre tract. He granted the right of way across the land without consideration be-

cause it would enable him to sell and deliver the timber on his land. It is argued that because appellee, after purchasing the 200-acre tract from Creech, sold a portion of it at a profit, he was not misled to his hurt by any representation or conduct of the appellant or its predecessors in title and therefore the doctrine of estoppel has no application. This argument loses sight of the fact, however, that he is entitled to the benefit of his bargain.

We think that when all of the evidence is considered it is sufficient to sustain the chancellor's findings of fact, and the judgment is affirmed.