## Van Hoose v. Fitzpatrick.
## Same v. Stafford et al.
## Same v. Brown's Heirs.

(Decided March 21, 1933.)

ADAMSON & SPARKS for appellant.

FRED HOWES and BEN H. VAUGHN for appellees.

OPINION OF THE COURT BY JUDGE RICHARDSON—Affirming.

These appeals are tried as one. Valentine Van Hoose died in 1875, owning a tract of land near Paintsville, in Johnson county, Ky. He was survived by his widow Pricy Van Hoose, and eleven children. A pro-

ceeding was instituted in the Johnson county court in 1876, to partition his land among his children and his widow. Eight contiguous lots were laid off on one side, and three on the opposite side of the dower. Lot No. 1 was allotted to Lynchia Van Hoose Brown; No. 2 to Jesse Van Hoose; No. 3 to Lafayette Van Hoose; No. 4 to William J. Van Hoose; No. 5 to Sarah Alice Van Hoose; No. 6 to Rheumia Van Hoose, who intermarried with ————; No. 7 to John C. Van Hoose; No. 8 to Julia Van Hoose, who married Rice; No. 9 to Harrison Van Hoose; No. 10 to Martin Van Hoose; and No. 11 to Benjamin J. Van Hoose. This appeal involves the ownership of these lots, the widow's dower, and a strip outside of that included in the boundary partitioned.

F. A. Brown, Lafayette Van Hoose, the heirs of F. M. Stafford, and the Chesapeake & Ohio Railroad Company, assert title to certain portions of it. It is conceded that the judgment of the circuit court is correct as to lots 1, 2, 3, 4, 5, and 6. Lafayette Van Hoose claims that the Browns have no title to lots 7 and 8. He asserts that Pricy Van Hoose on the death of Martin Van Hoose became the owner by descent of lot No. 7, and the one-half interest in lot No. 8, and his interest in the dower. The Staffords claim 19/74 of certain lots, and that portion of the dower south of a certain claimed division line. Lafayette Van Hoose, in order to assert title to a portion of the land claimed by the Staffords, claims that at the time of the partitioning of the land of Valentine Van Hoose, among the heirs and widow of Valentine Van Hoose, the entire boundary of land owned by him at the time of his death was not partitioned among them, and that he has acquired title thereto since the deeds of partition were executed and delivered to Valentine Van Hoose's heirs in the action to partition his land. After the partition deeds were executed and delivered, Martin Van Hoose, in 1886, acquired title by deed to lot No. 7, and the interest of John Z. Van Hoose in the dower. Martin Van Hoose and B. F. Van Hoose accepted the deed to lot No. 8 and the interest of Julia Van Hoose in the dower.

Martin Van Hoose died, unmarried and without issue, survived by nine brothers and sisters. Lafayette Van Hoose insists that his mother was living at Martin's death, and that F. A. Brown purchased and accepted, during her life, deeds of the nine brothers and sisters of Martin Van Hoose to lots No. 7 and 8, and

their interest in the dower. Brown also purchased lot No. 6 from Rheumia Van Hoose, and after he accepted his deed to it, and when he endeavored to take possession of it, by mistake he entered upon and took possession of No. 7. Martin Van Hoose, after he accepted deed to No 7, also by mistake took the actual possession of No. 6. Brown and Martin Van Hoose, acting under the impression that they were in possession of the correct lots, to which they had acquired title, used and occupied the same; Brown occupying lot No. 7, and Martin Van Hoose lot No. 6, until the death of Martin Van Hoose. After his death No. 6 was recognized by the brothers and sisters of Martin Van Hoose, and Brown, as the lot covered by the deed of Martin Van Hoose to No. 7. They sold and conveyed their interest in No. 7 to F. A. Brown, still recognizing it as No. 6. Brown accepted their deed to No. 6, fully understanding the mistake so made.

Lafayette Van Hoose contends that the paper title to lots Nos. 6 and 7 controls, and that Martin Van Hoose and Brown, in so taking the possession of the wrong lots, renders invalid Brown's title as to the heirs of Martin Van Hoose. The heirs of Martin Van Hoose, one of whom was Lafayette Van Hoose, are estopped by their own deeds from disputing Brown's title thereunder.

Conceding that on the death of Martin Van Hoose the whole of lot No. 7, one-half interest in lot No. 8, and his interest in the dower, passed under the statutes of decent to his mother, and on her death the heirs at law inherited the land owned by her at her death, they having made deeds conveying the land in fee, with covenant of general warranty, and not merely an expectancy, on the death of their mother, their title by descent from her inured to the benefit of their vendee, Brown, Bohon v. Bohon, 78 Ky. 408; Johnson v. Johnson, 173 Ky. 701, 191 S. W. 672; Inter-Mountain Coal & Lumber Co. v. Boggs, 247 Ky. 123, 56 S. W. (2d) 705, and cases cited.

Pricy Van Hoose died some time in the year 1900 or 1901. Ellen Brown, who held title to certain of the lots, died intestate in February, 1902. On June 30, 1902, F. M. Stafford, Lafayette Van Hoose, and F. A. Brown entered into a written agreement to divide the Valentine Van Hoose land respectively owned by them.

In accordance with this agreement, a division line was agreed on by them, ''commencing at the river near the mouth of a small branch, near and below the house where Lafayette Van Hoose lived at that time; thence a straight line westerly course to a box elder at the upper side of the county road; thence with the road a southeasterly course 212½ feet to a stone; thence a westerly course to the top of point to center of same to a stake; thence with center of point to the top of the hill to a ledge of rocks and chestnut cluster. Thence a westerly course down the hill to F. M. Stafford's line.''

''It was agreed that F. A. Brown have all the land North of said line, and Lafayette Van Hoose and F. M. Stafford all the lands south of said line belonging to said dower; each one to have according to what they have deed for. See Commissioner's report for better description of Pricy Van Hoose's dower.''

The writing evidencing the division agreement was signed, acknowledged, delivered, and recorded in the Johnson county clerk's office, April 18, 1903. The parties to it immediately took possession of the land, according to the agreement, and they and those claiming under them since have been continuously in actual possession of it, when these actions were instituted. After the division line was made, and Brown's occupancy of the land, in accordance with the agreement, Lafayette Van Hoose rented and cultivated Brown's portion of the land. He now claims an adverse title to Brown's, asserting it existed anterior to his renting it from Brown. As against the Staffords, he claims that the land of Valentine Van Hoose, as it was divided among the heirs at law and widow, did not embrace the entire boundary owned by him at the time of his death; that the correct line between it and the Stafford land is located beyond where it was recognized to be at the time it was partitioned. On this claim he asserts title to a portion of the land covered by the deeds of the Staffords. It is proper to observe that the agreement between F. A. Brown, Stafford, and Lafayette Van Hoose, refers to the commissioner's report of the division of the Valentine Van Hoose land for a better description of the land pertaining to which the agreement was entered into by them. One call in the division line as it fixed in the instrument which was signed and acknowledged by F. A. Brown, Lafayette

Van Hoose, and F. M. Stafford, is, "Thence a westerly course down the hill to F. M. Stafford's line," which plainly recognizes the Stafford line as the line of Valentine Van Hoose. The agreement of June 30, 1902, and its recitation, are utterly inconsistent with the present asserveration of title by Lafayette Van Hoose. The fact that years after the entering into this agreement he rented a portion of Brown's land, supports the contention of the Staffords and the Browns, and contradicts his present contention. To escape the agreement of June 30, 1902, he feebly denies that he signed and delivered it, but makes no attempt to impeach the acknowledgment as certified by the notary public. As a supplement to his effort to avoid the consequence of his own agreement, he contends that, at the time it was signed and acknowledged by the parties, Ellen Brown, who held title to certain interests in the Brown land, was dead; that her heirs at law were infants; and that they did not sign with him, F. A. Brown, and Stafford, the agreement to establish and fix the division line between their respective lands. If the children of Ellen Brown were themselves raising this question, such contention would be worthy of consideration; but when presented and urged by Van Hoose, it presents an entirely different question. The children of Ellen Brown, with actual knowledge of the division line as fixed by the instrument signed by their father, have acquiesced in, and approved, it. Besides, Lafayette Van Hoose is precluded by his participation in the making and signing of the agreement from relying on the invalidity of the instrument because of the absence of their signature thereto. His own acts estop him from relying upon or urging their infancy or their failure to sign the agreement. They may present and rely upon their infancy; but he cannot do so to defeat his own agreement. The appropriate time and place for the presentation of his objection because of the absence of their signature to the instrument, and of its invalidity on account of their infancy, were when he placed his signature to it. He, Stafford, and F. A. Brown, as interested parties, had the right to agree on the dividing line between their respective lands, and to reduce their agreement to writing, sign and deliver it, and surrender actual possession to each other in accordance with its terms. Kentucky Harlan Coal Company v. Harlan Gas Coal Company, 245 Ky. 234, 53 S. W.

(2d) 538, and cases cited. And, having done so, they and those claiming under them are bound by the agreed line. At the time Stafford's action was instituted against Lafayette Van Hoose, their ancestor had been in the possession of the land they claim for twelve years and five months; the Browns, before the institution of their action against them, had been in like possession of that portion to which they assert title, thirteen years, since the establishing of the agreed line. F. A. Brown during that period of time conveyed the land to Wall, trustee, and the Chesapeake & Ohio Railway Company. The railway company entered upon it and assumed actual, open, adverse possession thereof, until a portion of it was reconveyed to Brown, when he retook possession of that portion conveyed to him. Since that time, he and the railway company continuously have been in the actual adverse possession thereof until the bringing of their respective actions. Van Hoose in the circumstances will not now be permitted to repudiate his and Brown's and Stafford's agreement to establish the agreed line.

The adverse finding of the circuit court to the claim of Van Hoose and in favor of Wall and the railway company and the Browns is abundantly supported by the evidence. The title of Stafford to that portion of the Valentine Van Hoose land embraced in the division among his heirs and widow, as it is claimed by Staffords, is equally as well established by the evidence.

As respects the claim of Lafayette Van Hoose that Valentine Van Hoose owned land beyond the line recognized as his line by the heirs of Valentine Van Hoose and the commissioners of the court when apportioning it among them and allotting dower to his widow, is not only inconsistent with the language of the instrument signed by Lafayette Van Hoose, F. A. Brown, and Stafford, but it is unreasonable. It is not believable that they woul dpermit the commissioner's report to be made, filed, and confirmed without objections when they knew it did not divide among them all the land of their ancestor. In his effort to show that Valentine Van Hoose owned and was in possession, at the time of his death, of a portion of the land covered by the deeds of Staffords, he attempts to establish by himself, his brother, and others, that Valentine Van Hoose had pointed out to them, and that they otherwise had

knowledge of the line between his and Staffords' land, and for this reason they knew that his boundary included more land than was embraced in the division among the heirs as reported by the commissioners of the court. Without detailing the evidence, it is our opinion that it shows that the line between the Stafford land and the Valentine Van Hoose land, as shown by the commissioner's report and as established by the judgment of the circuit court, is the correct line. It is satisfactorily shown, beyond cavil, that the claims of Lafayette Van Hoose are without foundation in fact. An examination and close scrutiny of the evidence, for ourselves, convince us that the judgments in the several cases are fully sustained by the evidence.

Therefore the judgments are affirmed.